UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------X

CARLOS ROJAS,

                  *Plaintiff*,

    -against-

HUMAN RESOURCES ADMINISTRATION,

                  *Defendant*.

-------------------------------------X

**MEMORANDUM AND ORDER**

18-CV-6852(KAM)(LB)

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Carlos Rojas ("Plaintiff"), proceeding *pro se*, commenced the instant action against Defendant Human Resources Administration ("Defendant" or "HRA") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 *et seq.*, "New York City Employment Rules and Regulations," and the New York City Collective Bargaining Law ("NYCCBL") § 12-306(a)(1), (3). (*See* ECF No. 1 ("Compl.") at 3–4.) Plaintiff alleges race, color, sex/gender, national origin, age, and disability discrimination, and retaliation, and seeks compensatory, punitive, psychological, and "low salary" damages, as well as overtime pay, and payment for unused sick and annual leave. (*See id.* at 3, 6.)

Presently before the Court is Defendant's motion to dismiss the Third Amended Complaint ("TAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 56, Defendant's Motion to Dismiss.) For the reasons set forth below, Defendant's motion is **granted**.

## <u>BACKGROUND</u>

For the purpose of deciding Defendant's Rule 12(b)(6) motion, the Court accepts as true the factual allegations in the TAC and exhibits attached thereto,[1] (*see* ECF Nos. 42–42-5), and draws all inferences in Plaintiff's favor. *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015). In addition, Plaintiff filed a number of documents in opposition to Defendant's motion to dismiss. (*See* ECF Nos. 51–51-3; 52, 54[2].) Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation

---

[1] "In reviewing a motion to dismiss, we 'may consider [not only] the facts alleged in the complaint, [but also] documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" *Sabir v. Williams*, 37 F.4th 810, 814 (2d Cir. 2022) (alternations in original) (citation omitted).

[2] The Court notes that Plaintiff's opposition to Defendant's motion to dismiss was filed three times on the docket, once by Plaintiff, (*see* ECF No. 54), and twice by Defendant, on behalf of Plaintiff and in compliance with the Court's bundling procedure for motion papers, (*see* ECF Nos. 57–57-5), and as an exhibit to its reply brief, (*see* ECF No. 58-1).

omitted). "When a plaintiff proceeds *pro se*, however, the Court may consider 'materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a *pro se* litigant attaches to his opposition papers . . . and documents that the plaintiff either possessed or knew about and upon which he or she relied in bringing the suit." *Scott-Monck v. Matrix Absence Mgmt., Inc.*, No. 19-cv-11798(NSR), 2022 WL 2908007, at *4 (S.D.N.Y. July 22, 2022) (quoting *Gayot v. Perez*, No. 16-cv-8871(KMK), 2018 WL 6725331, at *4 (S.D.N.Y. Dec. 21, 2018)). In addition, the Court may "consider factual allegations made by a *pro se* party in his papers opposing the motion [to dismiss]." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

## I.    Factual Background

Plaintiff is a retired New York City employee who worked as a Principal Administrative Associate ("PAA"), Level I, for the HRA's Family Independence Administration ("FIA") from about June 2002 until June 30, 2018, the date of his retirement. (*See* TAC at 12; ECF No. 52, at 2.)

### A.    Failure to Promote

Plaintiff alleges that when he sought promotion to assistant center manager (PAA-II), the FIA Director, Enrique Arroyo, told him that a four-year college degree is required. (*See* TAC at 12.) Plaintiff further alleges that when he graduated from

Long Island University with a degree in economics, and passed the Administrative Manager Examination, Mr. Arroyo told him that "[n]ow days, a Master['s] degree is needed." (*Id.*)

Plaintiff asserts that during his employment, he was denied promotion several times[3] due to his age, national origin, and the HRA's retaliation for his complaints to various state and federal agencies. (*See id.* at 10.) Specifically, Plaintiff alleges that Peter Cantor, the Center Director for the FIA SNAP Center 61 who interviewed Plaintiff for the assistant center manager position in December 2017, told him that he was not selected "[d]ue to [his] age and [his] looks." (*Id.* at 8.) Plaintiff also alleges that Mr. Cantor and Wendy Fletcher, who also interviewed him for the position, told Plaintiff that he was not selected for promotion because "some people in Central Office" did not like him due to the complaints he made to "several outside State, and Federal agencies." (*Id.*) In an exhibit to the TAC, Plaintiff submitted the discrimination complaints he filed in 2014

---

[3] The TAC does not specify how many times and when Plaintiff sought promotion during his employment with the HRA. Exhibit III to the TAC includes an email communication from Peter Cantor, the Center Director for the FIA SNAP Center 61, to Plaintiff dated December 12, 2017, informing Plaintiff of the date and time of his interview for the assistant center manager position, which indicates that Plaintiff, at the very least, sought promotion in December 2017. (*See* ECF No. 42-3, Exhibit III to the TAC, at 2.) The TAC otherwise indicates January to June 2018 as the time period during which the alleged discriminatory and retaliatory acts occurred. (*See* TAC at 5.) Plaintiff also submitted two documents in Exhibit II to his opposition to Defendant's motion to dismiss, one of which is a memorandum from the HRA's Finance Office memorializing Plaintiff's interview for an unspecified position on May 24, 2004, and another is an email receipt, dated July 25, 2014, confirming the submission of Plaintiff's application for a customer service team leader position. (*See* ECF No. 54, Exhibit II to Plaintiff's Opposition, at 29–30.)

and 2018 to certain state and federal agencies, including the Civil Rights Division of the United States Department of Justice, the Equal Employment Opportunity Commission ("EEOC"), and the New York State Division of Human Rights, as well as the requests for a grievance hearing filed by his union, the Communications Workers of America ("CWA") Local 1180.[4]   Plaintiff alleges that he also made complaints to the New York City Office of Labor Relations, the New York City Collective Bargaining Office, the United States Department of Agriculture, the HRA Commissioner Steve Banks, and former New York State Senator Marty Golden regarding the HRA's failure to promote him.[5]   (*See id.* at 11.)

### B.  Denial of Overtime Compensation and Assignment of Additional Responsibilities

Plaintiff alleges that he did not receive overtime pay between January to June 2018, on the basis of his age and national origin.   (*See* TAC at 9; ECF No. 42-1, Exhibit I to the TAC, at 6.)

---

[4] (*See* ECF No. 42-1, Exhibit I to the TAC, at 5–6 (Plaintiff's discrimination charge to the EEOC and the New York State Division of Human Rights, dated November 27, 2018); 8 (Plaintiff's complaint to the Civil Rights Division of the United States Department of Justice, dated June 18, 2014); 11 (CWA Local 1180's request for Step I review of Plaintiff's grievance, dated September 3, 2014); 13 (CWA Local 1180's request for Step II review of Plaintiff's grievance, dated September 17, 2014); 10 (CWA Local 1180's request for Step III review of Plaintiff's grievance, dated February 22, 2019).)

[5] The Court notes that Plaintiff's discrimination charge to the EEOC and the New York State Division of Human Rights alleges that the HRA denied him several promotions and overtime pay, and assigned him responsibilities beyond the scope of his duties as PAA-I, based on his age and national origin.   (*See* ECF No. 42-1, Exhibit I to the TAC, at 5–6.)   Plaintiff's complaint to the Civil Rights Division of the United States Department of Justice generally alleges discrimination and retaliation, without specifying Plaintiff's protected characteristics upon which the discriminatory acts were based.   (*Id.* at 8.)   As for the other complaints, Plaintiff does not explain the bases on which they were made.

Plaintiff also alleges that he was discriminated against due to his age and national origin by being assigned responsibilities, such as preparing statistics reports, that exceeded the scope of his duties as PAA-I, essentially "performing as a Staff Analyst: Statistics." (*See* ECF No. 42-1, Exhibit I to the TAC, at 6.)[6]

**C.   Additional Allegations of Discrimination Based on National Origin**

In addition to allegedly being denied several promotions and overtime pay, and being assigned responsibilities beyond his role as PAA-I, due to, in part, his national origin, Plaintiff also alleges that Mr. Cantor and Ms. Fletcher made "[s]arcastic remarks" regarding his "[o]rigin" and "[S]panish accent," and told him that he looked like an "INCA." (*Id.* at 8.) Plaintiff also alleges that on January 10, 2018, his supervisor, Dawn Davis, said in a conversation with two other employees that Plaintiff "should be applying for a construction job instead of a P.A.A. II." (*Id.*) Finally, Plaintiff alleges that on May 27, 2018, a colleague responded to Plaintiff's comment that "Donna Summers and Diana Ross both married European gentlemen" by asking, "[s]o what are you Mexican?" (*Id.* at 9; *see* ECF No. 42-3, Exhibit III to the TAC, at 3—4.)

---

[6] The Court liberally construes Plaintiff's letter to the New York District Office of the EEOC, dated November 27, 2018, as alleging that he was not paid overtime wages and was assigned additional responsibilities due to his age and national origin.

### D.    Failure to Accommodate Plaintiff's Disabilities

Furthermore, Plaintiff alleges that he was diagnosed with depression and anxiety, sought an accommodation from the HRA, and the HRA "did not accommodate [his] ADA Request." (TAC at 9.) The TAC does not specify when Plaintiff was diagnosed with depression and anxiety,[7] when he made the accommodation request (or requests), and the nature of the accommodation sought, other than that he asked "to be placed in a different work environment." (*Id.* at 12.)

On July 30, 2021, Plaintiff submitted "more evidence," namely, his medical records from the South Beach Psychiatric Center, where he received treatment beginning on November 18, 2008. (*See* ECF Nos. 51—51-3.) Plaintiff's screening notes state that he was referred to the South Beach Psychiatric Center by the HRA due to his difficulties managing his anger at work. (*See* ECF No. 51-1, at 13, 15.) Plaintiff underwent a psychiatric evaluation on February 4, 2009, and was diagnosed with unspecified mood disorder, and was recommended individual therapy, anger management, and mindfulness group therapy. (*See id.* at 17—18.)

---

[7] Plaintiff's medical records, submitted as Exhibit IV to the TAC, indicate that Plaintiff began outpatient treatment at the Maimonides Medical Center in June 2018 and has been diagnosed with "depressive disorder due to work related stress." (ECF No. 42-4, Exhibit IV to the TAC, at 3.) In addition, a letter dated March 23, 2021 states that Plaintiff has been diagnosed with major depressive disorder, and recurrent and generalized anxiety disorder, and attended a weekly session with a psychotherapist and a monthly session with a psychiatrist at the Jewish Board Bay Ridge Counseling Center. (*Id.* at 4.) Finally, a note dated February 7, 2018 states that Plaintiff received psychotherapy from Helen Schwartz, L.C.S.W., B.C.D., P.C. (*Id.* at 6.)

Additionally, in his letter to the Court dated July 30, 2021, one of a series of submissions filed by Plaintiff in opposition to Defendant's motion to dismiss, Plaintiff stated that the HRA "did absolutely NOTHING to accommodate [him] to a better Work environment due to his condition."   (ECF No. 51, at 1.) Plaintiff also submitted what appears to be an online record of his August 6, 2014 transfer request to the HRA.  (*See* ECF No. 54, at 58.)

### E.   Other Allegations

Plaintiff's remaining allegations include that the HRA violated "Article 1(c) of the CWA Local 1180 contract" by assigning Plaintiff duties above his PAA-I title, such as preparing statistics reports, that were more suitable for a staff analyst or a PAA-II or -III.  (TAC at 12.)  Plaintiff alleges that he had to complete these tasks in addition to his PAA-I duties and responsibilities.  (*Id.*)  Further, Plaintiff alleges that the HRA violated Section 12-306(a)(1) and (3) of the NYCCBL by not responding to his request for a Step III hearing of his grievance. (*See id.* at 11; ECF No. 42-1, Exhibit I to the TAC, at 10.) Finally, Plaintiff alleges that he is owed payment for unused sick and annual leave.  (*See* ECF No. 42-3, Exhibit III to the TAC, at 16, 19.)

## II.  Procedural History

Plaintiff commenced the instant action on November 29, 2018.  (*See* Compl.)  Plaintiff moved to proceed *in forma pauperis*, and on April 25, 2019, the Court granted Plaintiff's motion and dismissed the Complaint for failure to state a claim upon which relief may be granted, without prejudice and with leave to file an amended complaint.  (*See* ECF No. 9, Memorandum and Order dismissing the Complaint.)  On August 2, 2019, Plaintiff filed an amended complaint.  (*See* ECF No. 12, Amended Complaint.)  On September 4, 2019, the Court issued an Order advising Plaintiff that the Amended Complaint reasserted untimely claims and failed to correct the deficiencies identified in the Court's April 25, 2019 Memorandum and Order.  (*See* ECF No. 14, Order dated September 4, 2019, at 2.) In that same Order, the Court stayed the case for thirty days to allow Plaintiff to file a second amended complaint.  (*See id.* at 2–3.)

On November 1, 2019, Plaintiff filed a second amended complaint.  (*See* ECF No. 16, Second Amended Complaint ("SAC").) On June 1, 2020, the Court advised the parties that the SAC may proceed against the HRA, having found that Plaintiff proffered proof of administrative exhaustion of at least one of his claims, and that the SAC, along with its attachments, "satisf[ied] the 'minimal burden' of alleging facts suggesting an inference of discriminatory motivation for adverse employment actions."  (ECF

No. 18, Order dated June 1, 2020, at 1—2 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84-85 (2d Cir. 2015)).)  The Court directed the Clerk of Court to issue a summons against the HRA, and serve the summons, the SAC, and the Court's June 1, 2020 Order on the HRA.  (*See id.* at 2—3.)

Thereafter, the case was stayed, pending the suspension of service of process by the United States Marshals Service for *in forma pauperis* actions due to the Covid-19 pandemic.  (*See* ECF No. 22, Order dated October 22, 2020.)  After a few unsuccessful attempts, the HRA was served on January 7, 2021.  (*See* ECF No. 34, Supplemental Summons.)  On January 28, 2021, the HRA filed a motion for a pre-motion conference, which the Court granted, and during the pre-motion conference, held on February 19, 2021, the Court granted Plaintiff "one final opportunity to amend his complaint to set forth facts in support of his discrimination claims against Defendant."  (Minute Entry dated February 19, 2021.)

On April 14, 2021, Plaintiff filed the TAC.  (*See* TAC.) The HRA has moved to dismiss the TAC, and the HRA's motion to dismiss was fully briefed on November 5, 2021.  (*See* ECF Nos. 56, Notice of Motion; 56-2, Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Br."); 57, Plaintiff's Opposition to Defendant's Motion; 58, Defendant's Reply Memorandum of Law in Further Support of its Motion to Dismiss.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).

Employment discrimination claims under Title VII, the ADEA, and the ADA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (Title VII); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106–07 (2d Cir. 2010) (ADEA); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (ADA). "To defeat a motion to dismiss, however, a plaintiff 'is not required to plead a *prima facie* case under *McDonnell Douglas*.'" *Harris v. N.Y.C. Human Res. Admin.*, No. 20-cv-2011(JPC), 2021 WL 3855239, at *6 (S.D.N.Y. Aug. 27, 2021) (quoting *Vega*, 801 F.3d at 84). *See NAACP v. Merrill*,

939 F.3d 470, 477 (2d Cir. 2019) ("A 'prima facie case . . . is an evidentiary standard, not a pleading requirement.'") (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

Rather, a plaintiff must "allege that the employer took adverse action against [him] at least in part for a discriminatory reason, and [he] may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. At the motion to dismiss stage, "the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[ ] their claims across the line from conceivable to plausible.'" *Id.* (alterations in original) (quoting *Twombly*, 550 U.S. at 570).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). However, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d

Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.") (italics and citations omitted).

## DISCUSSION

### I.   The HRA is Not a Suable Entity

Defendant asserts, and the Court agrees, that the HRA is not a suable entity.  Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."  N.Y. City Charter, chap. 17 § 396.  *See Siino v. N.Y.C. Human Res. Admin./Dep't of Soc. Servs.*, No. 14-cv-7217(MKB), 2015 WL 1877654 (E.D.N.Y. Apr. 21, 2015) (dismissing all claims against the HRA, reasoning that "[a]s a municipal agency of New York City, the HRA is not a suable entity.") (internal quotation marks and citations omitted). Accordingly, all of Plaintiff's claims against the HRA are dismissed.  Even if the Court were to construe Plaintiff's claims as having been asserted against the City of New York, the TAC is dismissed, for the reasons set forth below.

### II.  Causes of Action

Because Plaintiff proceeds *pro se*, the Court must construe the allegations in the TAC to "raise the strongest claims that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.

1994).  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  Plaintiff asserts discrimination and retaliation claims under Title VII, the ADEA, the ADA, and "New York City Employment Rules and Regulations," as well as a violation of NYCCBL § 12-306(a)(1), (3).[8]  (TAC at 4–6.)  The Court does not limit its analysis to these claims, however, in consideration of Plaintiff's *pro se* status.  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017).

The Court, therefore, liberally construes the TAC to assert the following causes of action: (1) race, color, sex/gender, and national origin discrimination under Title VII; (2) hostile work environment under Title VII; (3) retaliation under Title VII; (4) age discrimination under the ADEA; (5) hostile work environment under the ADEA; (6) retaliation under the ADEA; (7) disability discrimination under the ADA; (8) race, color, national origin, age, and disability discrimination under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; (9) hostile work environment under the NYSHRL; (10) retaliation under the NYSHRL; (11) race, color, national origin, age, and disability discrimination under the New York City Human Rights Law ("NYCHRL"),

---

[8] The federal statute(s) under which Plaintiff's retaliation claim is brought is not clear; because Plaintiff alleges that the HRA retaliated against him for the complaints he made to various entities and persons, and his age and national origin are the only two protected characteristics that the complaints, as a whole, identified as the bases of the HRA's discriminatory and retaliatory acts, the Court assumes, for the purpose of this motion, that Plaintiff asserts retaliation under Title VII and the ADEA.

N.Y.C. Admin. Code §§ 8-107 *et seq.*; (12) hostile work environment under the NYCHRL; (13) retaliation under the NYCHRL; (14) a violation of NYCCBL § 12-306(a)(1), (3); (15) a violation of "Article 1(c) of the CWA Local 1180 contract," (TAC at 12); and (16) failure to pay unused sick and annual leave.[9]

**III. Timeliness**

  **A. Claims under Title VII, the ADEA, and the ADA**

   "Before a plaintiff may assert claims under Title VII or the ADEA in federal court, [he] must present the claims forming the basis of such a suit in a complaint to the EEOC." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (Title VII); *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) (ADEA)).  The same is true of claims pursuant to the ADA.  *See Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 258 (S.D.N.Y. 2015).  A claim under each of these statutes is time barred if the plaintiff does not file a charge with the EEOC "within 180 days of the alleged illegal discriminatory or retaliatory act or file[ ] a complaint with an appropriate state or local agency within 300 days of the occurrence of the alleged illegal act." *Cruz v. City of New York*, No. 21-

---

[9] As discussed *infra*, the Court declines to exercise supplemental jurisdiction over Plaintiff's discrimination and retaliation claims under the NYSHRL and the NYCHRL.  Accordingly, the Court does not analyze whether such claims are barred by the statute of limitations and/or for failure to state a claim.

cv-1999(DLC), 2021 WL 5605139, at *4 (S.D.N.Y. Nov. 30, 2021) (citing 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (ADA); 29 U.S.C. § 626(d) (ADEA)).[10]

Additionally, to bring a suit in federal court under Title VII, the ADEA, and the ADA, the claimant must first obtain an EEOC right-to-sue letter. *See Legnani v. Alitalia Linee Aeree Italianer S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001); *Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186, 192 (E.D.N.Y. 2016). For a claim under the ADEA, "no civil action may be commenced by an individual under [the ADEA] until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626(d).

"Where the plaintiff complains of discrete discriminatory or retaliatory acts such as 'termination, failure to promote, denial of transfer, or refusal to hire,' such claims

---

[10] "[A] prospective plaintiff has 300 days to bring suit under the ADEA if the allegedly unlawful conduct occurred in a state that maintains a statute prohibiting age discrimination in employment, regardless of whether the prospective plaintiff has presented [his] claim to an appropriate state agency. But under Title VII and the ADA, a plaintiff may only benefit from the 300 day limitations period for such claims -- as opposed to the 180 day limitations period -- if [he] has first sought relief from an appropriate state or local administrative agency. . . . The Second Circuit, however, has held that Title VII and ADA charges filed with the EEOC from New York are deemed to be simultaneously filed with the appropriate New York state agency pursuant to the EEOC's regulations and are therefore entitled to the 300 day limitations period." *Cruz*, 2021 WL 5605139, at *4 n.5 (citing *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327–28 (2d Cir. 1999)). In the present case, Plaintiff filed his discrimination charge to the New York State Division of Human Rights and the New York District Office of the EEOC on November 27, 2018. (*See* ECF No. 42-1, Exhibit I to the TAC, at 5–6.) Accordingly, the Court analyzes Plaintiff's claims under Title VII, the ADEA, and the ADA as subject to the 300-day limitations period.

are not actionable if they occurred prior to the 300-day period even though they may be 'related to' acts that occurred within the permissible 300-day period." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).  Claims under Title VII, the ADEA, and the ADA accrue when "the plaintiff knew or with the exercise of due diligence could have known that the employment action giving rise to the charge had occurred." *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007).

"While discrete claims of discrimination and retaliation must be brought within the 300-day limitations period to be actionable, a different rule applies with regard to hostile work environment claims." *Spence v. Bukofzer*, No. 15-cv-6167(ER), 2017 WL 1194478, at *5 (S.D.N.Y. Mar. 30, 2017) (citing *Morgan*, 536 U.S. at 122).  In *Morgan*, the United States Supreme Court explained that "a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  536 U.S. at 122.

In the instant case, Plaintiff filed his EEOC Charge on November 27, 2018.  (*See* ECF No. 42-1, Exhibit I to the TAC, at 5— 6.)  Thus, any discrete discriminatory or retaliatory acts that occurred prior to January 31, 2018 exceed the scope of Title VII, the ADEA, and the ADA's 300-day statute of limitations, and are

therefore unactionable.  The discrete acts of discrimination and/or retaliation that Plaintiff alleges are the HRA's failure to promote him, accommodate his depression and anxiety by transferring him to a different work environment, and compensate him for certain overtime hours worked, as well as the HRA's assignment to Plaintiff of responsibilities beyond his role as PAA-I.  *See Zoulas*, 400 F. Supp. 3d at 50 ("Examples of discrete acts . . . include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position."); *Harvin v. Manhattan and Bronx Surface Transit Operating Auth.*, No. 14-cv-5125(CBA), 2018 WL 1603872, at *5 (E.D.N.Y. Mar. 30, 2018) (defendant's "repeated rejections of a plaintiff's proposed accommodations are each discrete acts"); *Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 154 (E.D.N.Y., 2005) ("[I]t is well-settled in the Second Circuit that alleged failures to compensate adequately, transfers, job assignments and promotions are discrete acts . . . .").

        Some of the discrete discriminatory and/or retaliatory acts alleged by Plaintiff either are undated or occurred prior to January 31, 2018, and thus are subject to dismissal based on untimeliness.  First, Plaintiff alleges that he was passed over for several promotions due to his age, national origin, and in retaliation for the complaints he made to several outside entities and persons, but he does not specify how many times and when.

Plaintiff submitted, in an exhibit to the TAC, an email communication regarding his interview for the assistant center manager position on December 14, 2017, but has not alleged that he was denied the promotion after January 31, 2018. (*See* ECF No. 42-3, Exhibit III to the TAC, at 2.)  Plaintiff also submitted two documents indicating that he interviewed for an unspecified position in May 2004 and submitted a job application for a customer service team leader position in July 2014, (*see* ECF No. 54, at 29–30); both dates are outside the 300-day limitations period for Title VII and ADEA claims.

Second, Plaintiff alleges that the HRA failed to accommodate his depression and anxiety, but does not specify when he made the accommodation request(s) and when the HRA denied the request(s).  (*See* TAC at 9, 12.)  Plaintiff submitted a document indicating that he filed an online transfer request on August 6, 2014, (*see* ECF No. 54, at 58), and though Plaintiff does not allege when the HRA denied the request, the denial likely occurred sometime prior to January 31, 2018, rather than after January 31, 2018, almost three and a half years after Plaintiff's August 2014 request.  Because these discrete discriminatory and/or retaliatory acts alleged by Plaintiff, namely, that the HRA failed to promote him and accommodate his disabilities, either are undated or took place before January 31, 2018, Plaintiff has not asserted timely claims of discrimination or retaliation under Title VII or the

ADEA based on such conduct.  Furthermore, Plaintiff alleges no facts to support equitable tolling.

With regard to the HRA's alleged failure to compensate Plaintiff for certain overtime hours, and assignment of duties, such as preparing statistics reports, above his role as PAA-I, Plaintiff alleges that he was not paid overtime wages between January to June 2018, and that he prepared "daily [s]tatistics [r]eports" from 2011 to June 30, 2018. (*See* TAC at 9, 23.)  Because "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice,'" *Morgan*, 536 U.S. at 114, Plaintiff has alleged timely claims of discrimination under Title VII and the ADEA based on each instance of failure to pay overtime wages or assignment of additional responsibilities that postdated January 31, 2018. *See Palmer v. Shchegol*, 406 F. Supp. 3d 224, 231 (E.D.N.Y. 2016) ("Claims based on payments made pursuant to an alleged discriminatory pay structure accrue on the date each payment is issued.  Hence, each paycheck Plaintiff received in the 300 days prior to her October 25, 2013 EEOC filing . . . was separately actionable and claims arising therefrom were timely filed.").

As for the isolated remarks that allegedly were made by Plaintiff's colleagues, including "[s]arcastic remarks" regarding Plaintiff's "[o]rigin" and "[S]panish accent," and that Plaintiff looked like an "INCA," "should be applying for a construction job

20

instead of a P.A.A. II," and that Plaintiff was not selected for promotion due to his "age" and "looks," (TAC at 8), the Court liberally construes the allegations as cumulatively asserting a hostile work environment claim under Title VII. Hostile work environment claims "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. For hostile environment claims, the "'unlawful employment practice' cannot be said to occur on any particular day[,] occur[ring] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts." *Id.* (citations omitted). And "as long as any act contributing to the hostile work environment claim falls within the 300-day period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Zoulas*, 400 F. Supp. 3d at 50 (citing *Morgan*, 536 U.S. at 117).

Plaintiff alleges that on May 27, 2018, a colleague asked him, "So what are you Mexican?" in response to Plaintiff's comment that "Donna Summers and Diana Ross both married European gentlemen." (*See* TAC at 9; ECF No. 42-3, Exhibit III to the TAC, at 3–4.) Because Plaintiff has alleged at least one "act contributing to the hostile work environment claim [that] falls within the 300-day period," *Zoulas*, 400 F. Supp. 3d at 50,

Plaintiff's hostile environment claim based on national origin under Title VII is not time barred, and the Court considers all acts, even those that occurred prior to January 31, 2018, that contributed to the same alleged illegal employment practice. *See Morgan*, 536 U.S. at 117.[11]

## IV.   Administrative Exhaustion

Exhaustion of administrative remedies is a condition precedent[12] to bringing a claim under Title VII, the ADEA, and the ADA, although "claims not explicitly pleaded in an EEOC charge nevertheless may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 174 (E.D.N.Y. 2017) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006)); *see also Amin v. Akzo Nobel Chems., Inc.*, 282 F. App'x 958, 960–61 (2d Cir. 2008); *Tanvir v. N.Y.C. Health & Hosps. Corp.*, 480 F. App'x. 620, 621 (2d Cir. 2012).   "A claim is considered reasonably related if the conduct complained of would fall within

---

[11] The allegation that Plaintiff was told by the Center Director that he was not selected for promotion due to his "age" and "looks" can also be very liberally construed as asserting a hostile environment claim under the ADEA.   However, Plaintiff has not alleged that the remark was made after January 31, 2018, nor has he alleged any other act contributing to hostility in the workplace premised on Plaintiff's age that occurred post January 31, 2018.   Because a hostile work environment claim under the ADEA would be time barred, the Court declines to assess whether Plaintiff has stated such a claim.

[12] The United States Supreme Court held in *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, that Title VII's administrative exhaustion requirement is not a jurisdictional prerequisite and can be waived if not timely asserted.   Here, no waiver issues are present with respect to administrative exhaustion because Defendant has asserted lack of exhaustion as a basis for dismissal.   (*See* Def. Br. at 7–9.)

the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001) (internal quotation marks and citation omitted).  "In this inquiry, 'the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'"  *Williams*, 458 F.3d at 70 (alteration in original) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)). "Generally, courts dismiss claims that are so qualitatively different from the allegations contained in an EEOC charge that an investigation would not likely encompass the new allegations." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 469 (S.D.N.Y. 2011) (citing *Mathirampuzha v. Potter*, 548 F.3d 70, 74-78 (2d Cir. 2008)).  "Although merely checking a box on the EEOC form charge identifying the basis of the charge does not necessarily control the scope of an EEOC charge, the absence of a checkmark weighs against concluding that the plaintiff has alleged discrimination on the basis of the claim designated by that box." *Lebowitz*, 407 F. Supp. 3d at 174.

Plaintiff checked only the "national origin" and "age" boxes in his EEOC Charge as the bases of the discrimination complained of.  (*See* ECF No. 42-1, Exhibit I to the TAC, at 5.) In addition, the balance of the factual allegations set forth in Plaintiff's letter to the New York District Office of the EEOC,

dated November 27, 2018, asserts that due to his age and national origin, Plaintiff was denied several promotions, despite his qualifications, and overtime compensation, and that he was assigned responsibilities that exceeded the scope of his duties as PAA-I, while not being compensated or promoted in line with the added responsibilities. (*Id.* at 6.)  Notably, Plaintiff did not make any allegations concerning his race, color, sex/gender, or disability, or retaliation in the EEOC Charge or the letter to the New York District Office.  (*Id.*)

The Second Circuit has stated that courts should avoid "draw[ing] overly fine distinctions between race and national origin claims as part of the threshold exhaustion inquiry prior to the full development of a plaintiff's claims, given the potential overlap between the two forms of discrimination, and the 'loose pleading' which is permitted in the EEOC complaint." *Deravin*, 335 F.3d at 202 (2d Cir. 2003) (citation omitted).  "[R]ace and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case," and "even in the absence of an express linkage between race and national origin, the specific facts alleged by a plaintiff in his or her EEOC complaint may suggest both forms of discrimination, so that the agency receives adequate notice to investigate discrimination on both bases." *Id.* at 201–02.  The relationship between color and national origin discrimination claims is close.

Thus, allegations of a Hispanic-American employee that he was treated differently due to his national origin may imply discrimination based on his race and color, in addition to national origin. In other words, Plaintiff's claim that he was discriminated against due his national origin could potentially have given the EEOC "adequate notice to investigate discrimination" based on his race and color. *Mathirampuzha*, 548 F.3d at 77. The same cannot be said, however, for Plaintiff's claims of sex/gender- or disability-based[13] discrimination, or retaliation. *See Richards v. City of New York*, No. 19-cv-10697(MKV), 2021 WL 4443599, at *5 (S.D.N.Y. Sept. 28, 2021) ("[W]hile in the EEOC charge Plaintiff alleged discrimination based only on national original [sic] and retaliation, discrimination based on race and color would reasonably fall within the scope of the EEOC investigation and could reasonably be expected to grow out of Plaintiff's allegations. Accordingly, the Court finds that Plaintiff's race and color discrimination claims are reasonably related to the national origin discrimination claim alleged in the EEOC charge such that they have been exhausted properly.") (internal citation omitted); *Sharabura v. Taylor*, No. 03-cv-1866(JG), 2003 WL 22170601, at *3 (E.D.N.Y. Sept. 16, 2003)

---

[13] Indeed, the EEOC's Notice of Right to Sue and the letter from the Civil Rights Division of the United States Department of Justice to Plaintiff, both dated July 22, 2019, state that Plaintiff may commence a federal action under Title VII and the ADEA, but not the ADA. (*See* ECF No. 42-1, Exhibit I to the TAC, at 2–3.)

(holding that plaintiff's "race and color claims are 'reasonably related' to her national origin claim in her EEOC complaint"); *O'Quinn v. City of New York*, No. 19-cv-9663(LTS), 2021 WL 4429787, at *6 (S.D.N.Y. Sept. 27, 2021) ("Because Plaintiff did not raise the disability discrimination he alleges to have suffered in his EEOC Charge—and because that discrimination could not reasonably have been expected to fall within the scope of the EEOC investigation growing out of the charge [of race discrimination] that was made—Plaintiff's ADA claims are unexhausted and must be dismissed.") (alternation in original) (internal quotation marks and citation omitted); *Pinkard v. N.Y.C. Dep't of Educ.*, No. 11-cv-5540(FM), 2012 WL 1592520, at *8 (S.D.N.Y. May 2, 2012) ("Courts have consistently held that discrimination claims based on age, sex, or disability are not reasonably related to claims based on race or color, and *vice versa*.").

There is no dispute that Plaintiff failed to check the "sex," "disability," and "retaliation" boxes in his EEOC Charge. Likewise, it is undisputed that Plaintiff failed to provide the EEOC with any factual allegations concerning discrimination against him on the basis of his sex/gender or disability, or retaliation. Simply put, these claims were not raised in the administrative proceeding, are not reasonably related to national origin and age discrimination claims that were raised in the administrative proceeding, and are thus barred in this action.

Accordingly, Plaintiff's federal claims of sex/gender and disability discrimination, and retaliation are dismissed.

In summary, the following claims are dismissed as barred by the statute of limitations[14] and/or for failure to exhaust administrative remedies: (1) sex/gender discrimination under Title VII (unexhausted)[15]; (2) retaliation under Title VII (unexhausted and time barred); (3) hostile work environment under the ADEA (time barred); (4) retaliation under the ADEA (unexhausted and time barred); and (5) disability discrimination under the ADA (unexhausted and time barred).

The Court next turns to whether Plaintiff has plausibly stated the following claims: (1) race, color, and national origin discrimination under Title VII; (2) hostile work environment under Title VII; (3) age discrimination under the ADEA; (4) a violation of NYCCBL § 12-306(a)(1), (3); (5) a violation of "Article 1(c) of the CWA Local 1180 contract," (TAC at 12); and (6) failure to pay unused sick and annual leave.

---

[14] Plaintiff has not alleged any circumstances under which equitable tolling would apply. *See Rein v. McCarthy*, 803 F. App'x 477, 480 (2d Cir. 2020) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. Because statutes of limitations protect important social interests in certainty, accuracy, and repose, equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances.") (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (internal quotation marks omitted)).
[15] Plaintiff's sex discrimination claim is also dismissed for failure to state a claim because Plaintiff has not alleged any facts to raise an inference of sex- or gender-based discrimination.

## V.    Failure to State a Claim

### A.    Discrimination under Title VII and the ADEA

As previously discussed, discrimination claims under Title VII and the ADEA are governed by the *McDonnell Douglas* burden-shifting framework. Plaintiff need not, however, allege a prima facie case of discrimination under *McDonnell Douglas* to survive a motion to dismiss. *Harris*, 2021 WL 3855239, at *6 (quoting *Vega*, 801 F.3d at 84). "At the pleading stage, a plaintiff alleging employment discrimination under Title VII must allege that the employer took adverse action against [him] at least in part for a discriminatory reason." *Palmer*, 406 F. Supp. 3d at 230 (citing *Vega*, 801 F.3d at 87). "A plaintiff proceeding under the ADEA must allege that discrimination was the 'but for' cause of the employer's adverse action." *Id.* (citation omitted).

The Court finds that Plaintiff's Title VII and ADEA discrimination claims predicated on his allegations of denial of overtime compensation and assignment of responsibilities above his position as PAA-I, should be dismissed because Plaintiff has not sufficiently alleged circumstances giving rise to a plausible inference of discrimination. Plaintiff alleges, in a conclusory fashion, that he was deprived of overtime wages and was assigned tasks, such as preparing statistics reports, that were outside the scope of his duties as PAA-I, because of his age and national origin. (*See* ECF No. 42-1, Exhibit I to the TAC, at 6.)  Despite

28

four opportunities to state adequate claims, Plaintiff has not alleged any facts from which it can be inferred that the adverse employment actions were motivated by his age and national origin, *i.e.*, that similarly situated employees without these protected characteristics were not deprived of overtime compensation and were not required to prepare statistics reports. *Cf. Littlejohn*, 795 F.3d at 312 ("An inference of discrimination can arise from circumstances including, but not limited to, . . . the more favorable treatment of employees not in the protected group . . . . ") (internal quotation marks and citation omitted).

Because Plaintiff's allegations are devoid of any facts that suggest that the alleged denial of overtime compensation and assignment of additional responsibilities were motivated by Plaintiff's protected characteristics, or, in the case of the ADEA claim, that the adverse employment actions alleged would not have occurred but for Plaintiff's age and national origin, Plaintiff's Title VII and ADEA discrimination claims are dismissed for failure to state a claim.

### B.   Hostile Environment under Title VII

To state a hostile work environment under Title VII, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff

subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [membership in a protected class]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and ellipsis omitted). The Court construes the TAC as alleging hostility in the workplace stemming from Plaintiff's race, color, and national origin.

A plaintiff "need not show that [his] hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered [his] working conditions." *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (alterations in original) (citations omitted). When deciding "whether a plaintiff suffered a hostile work environment, [the Court] must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 253 (E.D.N.Y. 2016) (alteration in original) (internal quotation marks omitted) (quoting *Littlejohn*, 795 F.3d at 321).

Furthermore, a plaintiff must allege that "a specific basis exists on which to impute [the discriminatory] conduct to the employer." *Bonterre v. City of New York*, No. 18-cv-745(ER),

30

2021 WL 4060358, at *4 (S.D.N.Y. Sept. 7, 2021) (citing *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998)). *See Green v. Rochdale Vill. Soc. Servs., Inc.*, No. 15-cv-5824(BMC), 2016 WL 4148322, at *9 (E.D.N.Y. Aug. 4, 2016) ("If a plaintiff is subjected to a hostile work environment by co-employees . . . but the employer has no reason to know about it, then the situation is akin to a tree falling in the forest with no one there to hear it. Thus, a court must also be able to impute the hostile work environment to plaintiff's employer."); *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 382 (S.D.N.Y. 2006) ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.") (internal quotation marks omitted) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

"Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (citation omitted). As such, "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). "Isolated acts, unless very

serious, do not meet the threshold of severity or pervasiveness."
*Alfano*, 294 F.3d at 374.

In the instant case, Plaintiff points to four specific
incidents: (1) Plaintiff's supervisor telling two other employees
that Plaintiff "should be applying for a construction job instead
of a [PAA-II]"; (2) being told by Mr. Cantor, the Center Director,
that he was not promoted due to, in part, his "looks"; (3) being
told by Mr. Cantor and Ms. Fletcher, another supervisory employee,
that he looked like an "INCA"; and (4) a colleague asking him
whether he is Mexican.  Plaintiff was told by the Center Director
sometime after his December 14, 2017 interview that he was not
promoted due to his looks; the comment by Plaintiff's supervisor
that Plaintiff should be applying for a construction job was made
on January 10, 2018; Plaintiff was told by the Center Director and
another supervisory employee that he looked like an "INCA" sometime
after January 10, 2018; and a colleague asked him whether he is
Mexican on May 17, 2018.  (*See* TAC at 8–9.)  Thus, the four
incidents alleged by Plaintiff occurred within a span of
approximately five months.

In addition, Plaintiff alleges that Mr. Cantor and Ms.
Fletcher made "[s]arcastic remarks" regarding his "[o]rigin" and
"[S]panish accent," without specifying when, how many times, or
what the remarks were.  The Court finds that the alleged comments
are episodic and do not rise to the level of permeating the

workplace, and though offensive and insensitive, are not
sufficiently severe to create an abusive working environment.
*Littlejohn*, 795 F.3d at 320-21. *See Boncoeur v. Haverstraw-Stony
Point Cent. Sch. Dist.*, No. 20-cv-10923(KMK), 2022 WL 845770,
(S.D.N.Y. Mar. 22, 2022) (dismissing plaintiff's hostile work
environment claim notwithstanding his allegations, *inter alia*,
that one of his supervisors "mocked [his] accent through facial
gestures and shaking of her head," and "falsely claimed not to
understand [him]," and that "he was subject to an unspecified spate
of micro-aggressions") (internal quotation marks and citations
omitted); *Ariz v. Metro. Transp. Auth.*, No. 17-cv-4491(WHP), 2019
WL 2613476, at *6 (S.D.N.Y. June 26, 2019) (dismissing plaintiff's
hostile work environment claim despite his allegations that he was
subjected to unspecified micro-aggressions and two-race based
comments made by a coworker).

Accordingly, Plaintiff's Title VII and ADEA
discrimination, and Title VII hostile work environment claims are
dismissed for failure to state a claim. Having dismissed all of
Plaintiff's federal claims for discrimination and retaliation, the
Court declines to exercise supplemental jurisdiction over
Plaintiff's discrimination and retaliation claims under the NYSHRL
and NYCHRL.[16] *See Charley v. Total Off. Plan. Servs., Inc.*, 202

---

[16] There is no diversity jurisdiction in this case. Plaintiff and the HRA are
both citizens of New York. (*See* TAC at 3.)

F. Supp. 3d 424, 432 (S.D.N.Y. 2016) ("[D]istrict courts frequently decline to exercise supplemental jurisdiction over state employment discrimination causes of action when the federal claims have been resolved."); *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (internal quotation marks and citation omitted).

   **C.   Remaining Claims**

   Plaintiff alleges that the HRA violated "Article 1(c) of the CWA Local 1180 contract" by assigning Plaintiff duties above his PAA-I title, such as preparing statistics reports, that were more suitable for a staff analyst or a PAA-II or -III.  (TAC at 12.)  Plaintiff also alleges that the HRA violated Section 12-306(a)(1) and (3) of the NYCCBL by not responding to his request for a Step III hearing of his grievance.  (*See id.* at 11; ECF No. 42-1, Exhibit I to the TAC, at 10.)  Finally, Plaintiff alleges that he is owed payment for unused sick and annual leave.  (*See* ECF Nos. 42-1, Exhibit I to the TAC, at 6; 42-3, Exhibit III to the TAC, at 16, 19.)

The Court finds that Plaintiff has failed to state a claim for the HRA's violation of the CWA Local 1180 contract[17] and failure to pay unused sick and annual leave. Specifically, Plaintiff asserts, in a conclusory fashion, that the assignment of responsibilities that were allegedly outside the scope of his role as PAA-I violated the CWA Local 1180 contract, without submitting a copy of the contract or quoting the language of the provision of the contract that he alleges was violated. Similarly, Plaintiff submitted his timesheets from January to May 2018, and his email communication with the HRA's Office of Human Capital Management in which he claims that his sick and annual leave were not calculated correctly. (*See* ECF Nos. 42-5, Exhibit V to the TAC, at 1–21; 42-3, Exhibit III to the TAC, 19–23.) Plaintiff has not alleged the HRA's policy for employee accrual of sick and annual leave, the specific week(s) for which Plaintiff's sick and/or annual leave were/was miscalculated, or how much sick and annual leave payment he is owed. Though Plaintiff need not proffer "detailed factual allegations" to survive a motion to dismiss under Rule 12(b)(6), mere "labels or conclusions . . . will not do." *Ashcroft*, 556 U.S. at 678. Accordingly, Plaintiff's claims predicated on the HRA's alleged violation of the CWA Local 1180 contract and failure

---

[17] The Court assumes for the purpose of this motion that the CWA Local 1180 contract does not require arbitration because Defendant has not asserted that the contract contains a mandatory arbitration provision.

35

to pay unused sick and annual leave are dismissed for failure to state a claim.

With regard to the claim that the HRA violated Section 12-306(a)(1) and (3) of the NYCCBL by not responding to his request for a Step III hearing of his grievance, Defendant contends that pursuant to N.Y. Civil Serv. Law § 205(5)(d), the New York City Board of Collective Bargaining ("BCB") has exclusive jurisdiction "to hear claims arising under N.Y. Admin. Code § 12-306a(1) and (3)." Def. Br. at 9 (citing *Peele v. N.Y.C. Dep't of Soc. Servs./Human Res. Admin.*, 112 F.3d 505 (2d Cir. 1996) (unpublished)). The Court agrees. *See Peele*, 112 F.3d 505 ("It is well settled that N.Y. Civil Service Law § 205(5)(d) confers exclusive jurisdiction on the New York City Board of Collective Bargaining to hear claims arising under N.Y. Admin. Code § 12-306a(1) and (3), and that state courts lack jurisdiction over such claims.") (unpublished); *Patrolmen's Benevolent Assoc. of City of New York v. City of New York*, 741 N.Y.S.2d 506, 507 (1st Dep't 2002) (noting that the BCB, pursuant to N.Y. Civil Serv. Law § 205(5)(d), "has exclusive non-delegable jurisdiction to hear improper labor practice claims"); *Patrolmen's Benevolent Ass'n of City of New York Inc. v. City of New York*, 767 N.E.2d 116, 124 (N.Y. 2001) ("Civil Service Law § 205(5)(d) . . . authorizes BCB to exercise jurisdiction over improper practice charges, including a charge that a party is refusing to negotiate in good faith

concerning terms and conditions of employment"). Accordingly, Plaintiff's claim that the HRA violated NYCCBL § 12-306(a)(1), (3) is dismissed, without prejudice, for lack of subject matter jurisdiction.

2416ad173a23c8c0

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss this action is **granted**.  Plaintiff's claim that the HRA violated NYCCBL § 12-306(a)(1), (3) is dismissed, without prejudice, for lack of subject matter jurisdiction.  The Court declines to exercise supplemental jurisdiction over Plaintiff's discrimination and retaliation claims under the NYSHRL and the NYCHRL, and, therefore, these claims are also dismissed without prejudice.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully directed to enter judgment in favor of Defendant and close this case.  Defendant is requested to serve a copy of this Memorandum and Order and the judgment on *pro se* Plaintiff and note service on the docket.

**SO ORDERED**

Dated:     August 29, 2022
           Brooklyn, New York


                                   /s/
                        **HON. KIYO A. MATSUMOTO**
                        United States District Judge
                        Eastern District of New York